IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDY A. FELIZ, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| THE KINTOCK GROUP, et al. | : | No. 02-3541 |
| Defendants | : | |

ORDER

AND NOW, this          day  of                    , 2007, upon

consideration of the motion to dismiss of the Commonwealth defendants, it is

hereby ordered and decreed that plaintiff's complaint is DISMISSED.


BY THE COURT:


_____
PETRESE B. TUCKER, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDDY A. FELIZ,                    :    CIVIL ACTION
                    Plaintiff    :
        v.                       :
THE KINTOCK GROUP, et al.         :    No. 02-3541
                    Defendants   :

MOTION TO DISMISS BY DEFENDANTS PAUL, YANIS, BELLO AND CAISON
PURSUANT TO RULES 12(b)(1), 12(b)(6) AND 4(m)

Defendants Kenneth Paul from the Pennsylvania Board of Probation and

Parole (PBPP) and Glenn Yanis, Ernest Bello, and Lafayette Caison from the

Pennsylvania Department of Corrections (DOC)—the only additional defendants

who have been served, move to dismiss plaintiff's amended complaint pursuant

to Fed.R.Civ.P. 12(b)(1), 12(b)(6) and 4(m), incorporate the attached

memorandum of law, and state:

1.      Plaintiff, a pro se inmate, brought a complaint pursuant to 42

U.S.C. § 1983 against employees of a private contractor running a prerelease

center regarding events that occurred in 2001.  In 2004, he amended his

complaint raising new federal and state law claims regarding the 2001 events,

and adding defendants.

2.      Movants are PBPP Agent Paul and three DOC officials, Yanis, Bello

and Caison.  All four movants are among the defendants first added in 2004.

3.      Plaintiff requests declaratory relief as well a compensatory and

punitive damages.

4.      The claims against movants should be dismissed pursuant to Rule

4(m).

5.    Even if service time were extended, the statute of limitations bars all the claims against movants.

6.    Plaintiff's claims under the ADA and Rehabilitation Act fail because he sues only individuals and his mental health condition does not qualify as a disability.

7.    The civil conspiracy should be dismissed.

8.    Heck v. Humphrey bars the Eighth Amendment claim.

9.    Plaintiff has no applicable entitlement to due process

10.    The claim for negligent supervision/monitoring fails to state a claim.

11.    The claims against Parole Agent Paul are baseless

12.    To the extent that Feliz raises other federal claims, they fail to state a claim because they fail to allege the minimal facts required under Fed.R.Civ.P. 8.

13.    Sovereign immunity bars the state law claims against movants.

14.    Plaintiff fails to state a claim upon which relief may be granted as to movants.

WHEREFORE, this Court should grant movants' motion to dismiss.

Respectfully submitted,

THOMAS W. CORBETT, JR.
ATTORNEY GENERAL
By:  /s/Sue Ann Unger
Sue Ann Unger
Senior Deputy Attorney General
Attorney I.D. No. 39009

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107
Telephone:  (215) 560-2127          Susan J. Forney
Fax:  (215) 560-1031          Chief Deputy Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDDY A. FELIZ,                              :        CIVIL ACTION
                            Plaintiff       :
                    v.                      :
THE KINTOCK GROUP, et al.                   :        No. 02-3541
                            Defendants      :

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY
DEFENDANTS PAUL, YANIS, BELLO AND CAISON

I.      PROCEDURAL BACKGROUND

Moving defendants Kenneth Paul from the Pennsylvania Board of

Probation and Parole (PBPP) and Glenn Yanis, Ernest Bello, and Lafayette

Caison from the Pennsylvania Department of Corrections (DOC) (plaintiff

misstates and/or misspells the names) were recently served for the first time

with an amended supplemental complaint by the pro se inmate plaintiff,

regarding events that occurred in 2001.

The initial complaint was filed on December 30, 2003, against only the

Kintock Group and its employees:  Coates, Corbett, Cucinotta, Frank,

Montanez, Olive, Shniedmann, and Wiley.  Docket # 12.  Summons with the

original complaint were returned executed by the United States Marshal

Service against seven of the eight Kintock people.  Docket #20.  Default was

entered on June 5, 2006, as to the seven Kintock people.

Meanwhile, on April 2, 2004, Feliz moved to amend the complaint and

add defendants: PBPP employee Paul, DOC employees Yanis, Bello, Caison,

Cannady, Smith, Byrd, Peace, and Shniedmann (as Kintock Trustee). Id. # 19.

In June of 2004, the Court accepted the amended complaint as filed. Id. #22.

No service was made of the amended complaint on any additional defendant in 2004, 2005 and most if not all of 2006.  According to the United States Marshal's Office, plaintiff failed to submit a  process receipt and return form (USM 285) to request service of the additional defendants until over two years later, in October of 2006.  Said requests were processed in December of 2006, and service of those defendants who were still available was executed.[1]

Plaintiff raises claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C.A. § 12182(a); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and state law.  He requests declaratory judgment as well as compensatory and punitive damages.[2]

Movants are all the Commonwealth defendants who have been served: PBPP agent Paul, and the following DOC defendants:  Bello, Yanis, and Caison.

II.    FACTUAL ALLEGATIONS

A.    Factual Allegations From The Sections Of The Amended Supplemental Complain Preceding The Claims For Relief

In late 1999, plaintiff Feliz, who was in DOC custody, was placed on pre-release status at a contract community corrections facility run by the Kintock

---

[1] Mary Leftridge Byrd,  an additional defendant, was not served because the inmate did not include her in his process receipt and return form.  She is no longer with the DOC and is no longer in Pennsylvania.

[2] Interpreting the pro se complaint broadly, and to comport with 42 U.S.C. § 1983, and Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989), the Section 1983 claims for declaratory relief are against the movants—indeed all DOC and PBPP defendants—in their official capacities, and the claims for damages are against them in their individual capacities.

Group (Kintock or the Kintock Center).  ¶s 1-10 ("Facts – of Steven Bello, etc"
section of amended supplemental complaint), ¶ B(3) (punitive damages section
states Kintock deducted money as of 11-1999).  In January of 2001, while still
incarcerated at the Kintock Center, Feliz complained to a state representative
about the center.  He asserted the following violations by Kintock: Kintock's
refusing to transfer plaintiff who complained about lack of psychological
services and medications at the Kintock Center (Plaintiff was occasionally
paranoid. ¶ 10), denial of hearings for revoked privileges, revoked law library
passes, denial of appeal documents, and refusal to provide late meals. ¶ 4.
Plaintiff discussed his complaints with Pre-Parole Director of BCC (DOC
Bureau of Community Corrections) Region 1 defendant Bello in January of
2001. ¶s 1-9. Perhaps, defendant then-Director of Region 1 BCC Smith, or
then-high level official of Region 1 Mr. Peace processed the complaint and also
knew of  Feliz's complaining about the Kintock Center.

After consulting with Kintock staff, Mr. Bello denied plaintiff's request for
transfer to another center that provided the psychological services that plaintiff
thought he needed.  Id.  That happened in January of 2001.

Former SCI-Chester Superintendent Byrd, Bello, Smith, Peace and
Kintock staff knew that the center was not equipped to accommodate plaintiff
because of his mental health.  In February through May of 2001, Feliz changed
jobs, had difficulty receiving credit for travel time but received it after calling an
attorney, complained of not receiving pre-paid meals at the Center when he
arrived late, failed to pay his rent due to his failing to receive an employment

check through Kintock over Memorial Day weekend, and was told by Kintock staff that he would not receive parole. ¶s 11-15, 24.

Despite these problems, by June 1, 2001, plaintiff was employed full-time, engaged to be married, and due to start working in the Philadelphia Naval Shipyard.  ¶ CR-3.  He expected to gain parole, custody of his children, and a career at the shipyard where he would earn considerably more than he was earning at a tire store.  Id.

On June 1, 2001, plaintiff had a pre-parole meeting with defendant Parole Agent Paul.  ¶ 18.  Agent Paul reviewed Feliz's status in preparation for a third upcoming parole hearing, and assured him of the possibility of parole. ¶s 21-22, 25, 30.

On June 1, 2001, after meeting with Paul, Feliz was forcibly detained and handcuffed by DOC defendants Cannady, Yanis, and Caison.  Kintock staff watched.  ¶ 32-33.  While Yanis held Feliz against the wall with excessive pressure, Bello and Paul entered the room.  With the participation of Cannady, Caison, and Yanis, plaintiff was taken down to the floor, handcuffed, escorted to a van, and then to the State Correctional Institution at Graterford (SCI-Graterford). ¶ 40, 44.  Feliz received no notice or hearing before his removal from the Kintock Center.  ¶31, CR-B.

Once in the van, Yanis told Feliz that the DOC practice was to use an extraction team to remove inmates who violate a state law and/or pose a threat to an institution.  ¶ 42.  Yanis served Feliz with false misconduct report #090743 which referred to Feliz's driving and unauthorized absence from the

4

Kintock Center.   ¶43.  Bello later prepared a supplemental misconduct report # 105493, which Feliz received at SCI-Graterford. ¶ 45.  Bello and Coates (a Kintock staff member) also prepared a state violation report. ¶s 19-20.

Plaintiff contested the allegations in the reports.  ¶ 43.  Feliz confirms that he received process at SCI-Graterford on the misconduct charge when he avers that he appealed Misconduct 105493. Form complaint at 3(b). Agent Paul knew that Feliz had a driver's license with no moving violations and knew Feliz's true identity.  ¶ 23.  This information presumably would have helped plaintiff contest the misconduct report and criminal charges.  Paul did not intervene in the DOC decision to remove plaintiff from the Kintock Center.

### B.  Factual Allegations within Plaintiff's claims for relief

Feliz claims DOC defendants Cannady, Yanis, Caison and Bello, PBPP defendant Paul and Kintock defendant Coates used excessive force or failed to intervene/protect him from the assault when he was detained on June 1, 2001, in violation of the Eighth Amendment  and retaliated against him in violation of the First Amendment. ¶ CR-A.  He claims that by filing a false report, Bello (and Kintock defendant Coates) caused him to be abused by Caison, Cannady or Yanis, in violation of the Eighth Amendment. ¶ CR-C

He claims that by assaulting him, Cannady, Yanis and Caison conspired to violate state tort law.  ¶CR-B.  In addition, he claims that DOC defendant Bello and Kintock defendant Coates  violated his right to procedural due process under the Fourteenth Amendment, and violated state tort law by failing

to provide him with notice and a hearing prior to removing him from the Kintock Center  ¶ CR-B, CR-E-4.

He also claims that Parole Agent Paul entrapped him and thus violated his rights to due process and equal protection by failing to challenge the false allegations in the DOC misconduct charge before Feliz was moved from the pre-release center to SCI-Graterford.  Feliz does not sue any SCI-Graterford official regarding the process he received at SCI-Graterford for the misconduct.

Feliz also claims that Bello's refusal to transfer him in January of 2001, caused his forcible removal in June of 2001, and related damages, presumably in violation of the Eighth Amendment. ¶ CR-J-4.

Feliz claims that Smith, Byrd, Bello and Peace and Kintock staff violated his rights by failing to intervene or prevent the retaliatory actions by other Kintock staff, failing to transfer him to another center, and failing to provide the medications he wanted. ¶ CR1.

Plaintiff also refers to a breach of contract based upon a Kintock Mission Hand book of directives, and is presumably between Feliz and the Kintock defendants.  ¶ CR2 and the header above ¶CR1.

Plaintiff claims Smith, Byrd, Bello and Peace violated his rights by failing to supervise/monitor Kintock for its various violations during his stay prior to June of 2001. ¶ CR-2 (5-6).  He further alleges a civil conspiracy among Byrd, Bello and Peace related to the above. ¶CR-3.  In addition, Feliz asserts that Kintock staff entrapped him in violation of 42 U.S.C. § 12203 (Americans with Disabilities Act of 1990--ADA).

Fourth Amendment allegations appear under the Eighth Amendment averments.  Additional claims appearing without any factual allegations and refer to 42 U.S.C. § 1981 (header of ¶ CR-K), the Ninth Amendment, the Equal Protection Clause of the Fourteenth Amendment, conspiracy to violate his rights under Section 504 of the Rehabilitation Act of 1973, and Title 18 of Pa.C.S.A. § §5302 and 4904, 903. CR-J(1-A).  On the penultimate page, dated "3-26-04," as part of plaintiff's request for damages, plaintiff adds unspecified claims under the Establishment Clause of the First Amendment, 42 U.S.C. 1986(3), the Fifth, and Sixth Amendments, without any factual underpinning.

C.    <u>Additional Facts Subject to Judicial Notice</u>

Plaintiff concedes in ¶ CR-3(8-A, dated "2-4-03"), that an adverse affect was a one-to-two year sentence added at the end of his current sentence. According to his court commitment (Exh. D1), "Anthony Brown" was convicted of aggravated assault and sentenced to one to two years imprisonment to run consecutively to his then-current sentence.  The criminal complaint (Exh. D2) that led to that conviction specifies that Anthony Brown and Eddy Feliz are the same person and  that the aggravated assault occurred on June 1, 2001:

> while in custody for robbery for return to prison, [Anthony Brown a/k/a Eddy Feliz] knowingly, intentionally, or recklessly caused/attempted to cause bodily injury to another, and/or attempted by physical menace to put another in fear of imminent serious injury, by confronting the complainants, Kenneth Paul (Probation/Parole Agent), and Ernest Bello, Glenn Yanis, and Robert Cannady (D.O.C. employees), and struggling and wrestling with them, requiring substantial force to overcome the resistance, and causing injury to Mr. Bello, including a cut hand.

7

Plaintiff's habeas case in this Court also identifies him as Eddy Feliz, "convicted committed as Anthony Brown."  Feliz v. Lavan, No. 2:01-cv-6051-WY The Docket Report from that habeas case, attached as Exh. D3 (with Order), shows that a denial in 2004 of Feliz's motion for relief from judgment and answer in opposition, and a statement by Feliz "re: incriminating document/ attempt to dismiss a valid habeas corpus action, Questions/interpretation of Federal Law: "False Arrest, First Amendment Retaliation."  Feliz has thus not obtained habeas relief from conviction for the June 1, 2001 aggravated assault.

The workings of the U.S. Marhal's office regarding service of plaintiff's amended complaint are also subject to judicial notice and are discussed below.

III.    ARGUMENT

Fed.R.Civ.P. 12(b)(6 is designed to screen out cases where "a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted."  Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-12 (3d Cir. 1999).  The court should reject "bald assertions," "legal conclusions," and "unwarranted deductions," in a complaint when deciding a motion to dismiss.  Bright v. Westmoreland Cty., 380 F.3d 729, 735 (3d Cir. 2004); Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

This Court may consider certain documents without converting this motion to a summary judgment motion.  These include matters integral to or upon which plaintiff's claim is based. DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 444 (3d Cir. 2003)(court considers an insurance plan not attached to

the complaint based upon plaintiff's reference to a term—medical necessity"
clearly derived from the plan terms).  They also include, "matters of public
record, exhibits attached to the complaint, and undisputedly authentic
documents attached to a motion to dismiss."  Delaware Nation v. Pennsylvania,
446 F.3d 410, 413 and n. 2 (3d Cir. 2006)(citing Pension Benefit Guar. Corp. v.
White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir.1993)).

A.     The Claims Against Movants Should Be Dismissed Pursuant to
       Rule 4(m).

Fed.R.Civ.P. 4(m) provides that, if initial service "is not made upon a
defendant within 120 days after the filing of the complaint.  If Feliz
demonstrates good cause, the Court must extend time for service.  If he does
not, the Court may exercise its discretion either to dismiss the complaint
without prejudice or still extend the time for service.  See Petrucelli v. Bohringer
& Ratzinger, 46 F.3d at 1305, 1308 (3d Cir. 1995).  Here, plaintiff cannot make
the requisite showing of good cause.  See MCI Telecom. Corp. v. Teleconcepts, 71
F.3d 1086, 1097 (3d Cir.1995).  Because he cannot show good cause and in
light of factors discussed below, this Court should dismiss the case without
prejudice rather than extend the time for service.

1.     Plaintiff's Lack of Good Faith and Lack of some Reasonable
       Basis for Noncompliance with the Time Limit.

Feliz has in forma pauperis status (IFP) and thus benefits from
appointment of the U.S. Marshal's Office for service of process. 28 U.S.C. §
1915(d), Fed.R.Civ.P. 49(c)(2).  The Marshal effectuates service, however,  based
upon a process receipt and return form (USM 285) which the plaintiff must

first submit with the names and addresses of the defendants to be served. Plaintiff obviously met his obligation of submitting the process receipt and return form (USM 285) as to the original Kintock defendants, even though he was tardy. The summons as to the Kintock defendants were issued on March 30, 2004, and the Marshal had seven of them personally served within a month. Docket # 20. Thus plaintiff was aware of USM 285 that he needed to submit for the Marshal to serve defendants, by April of 2004, at the latest.

Plaintiff's amended complaint with the additional PBPP and DOC defendants was mailed on April 2, 2004. Summons were <u>not</u> issued, and service was not made until over two and a half years later. The Marshal's office confirms that plaintiff did not submit a USM 285 form until Fall of 2006. Where the U.S. Marshal fails to properly effect service of process through no fault of the litigant, the incarcerated pro se IFP plaintiff proceeding should not be penalized. See Fed.R.Civ.P. 4(m) (Supplementary Practice Commentary C4-38, Forgiving Pro Se Plaintiffs for Marshal's Omissions). In this case, however, it is through fault of the litigant. Feliz caused the delay in service. Thus, he cannot show good faith.

## 2.    Other Factors Weigh In Favor of Dismissal

Once the lack of good cause is determined, the Court should consider other factors in exercising its discretion. The factors that weigh in favor of dismissal are multiple. Feliz cannot claim that he did not know about the need for timely service. Tuke v. United States, 76 F.3d 155, 156 (7th Cir.1996). Indeed, Feliz had to know about service and what he needed to do for the

Marshal to effect it, because he was already familiar with the procedure related to the service of the Kintock defendants.

Moreover, in his amended complaint filed in April of 2004 (after ¶ 10-C), plaintiff states that he "seeks suspension of civil action (02-3541) until release from incarceration." On June 2, 2004, the Court denied Feliz's motion to stay proceedings. It appears that Feliz's failure to submit the MSJ 285 form to the Marshal was a means to delay the proceedings that the Court had refused to stay. The prejudice to movants caused by Feliz's delay of two and a half years is apparent from the record. Multiple defendants cannot be served and will not be available to testify on behalf of the served Commonwealth movants.

The two-year statute of limitations, at first blush, appears to weigh in favor of extending the time for service. Here, a dismissal without prejudice would be final as to movants. Yet, as argued below, the statute of limitations bars plaintiff's claims against movants anyway. Additional factors that the Court may consider, argued in the context of movants' Rule 12(b)(6) motion, are incorporated herein.

Because the record does not support a finding of "good cause," and because a discretionary extension is not appropriate under the circumstances, this Court should dismiss the claims against movants.

B.    Even if Service Time Were Extended, The Statute of Limitations Bars All the Claims Against Movants.

Claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S.

261, 266-67 (1985).  In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa. Cons. Stat. § 5524. A cause of action accrues when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998).

Plaintiff's claims against movants regard events of June 1, 2001, when he was subdued and returned from pre-release to SCI-Graterford, and events that preceded that return.  He had to be aware of the challenged events by June 1, 2001, at the latest.  All the above is clear from the amended complaint, dated and signed on March 26, 2004, when plaintiff first sues any movant. Plaintiff first sued DOC or PBPP officials almost three years after all events at issue.  The two-year statute of limitations thus bars all the Section 1983 claims against movants.

Section 1983 and the ADA borrow their statutes of limitations from Pennsylvania's statute of limitations for personal injury actions.  Because the Americans with Disabilities Act does not contain a statute of limitations, it too borrows the state limitations period for personal injury actions. See *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 118 (1st Cir.2003).

Therefore, the two year statute of limitations bars all ADA (and similarly, Rehabilitation Act) claims which are based on 2001 events, as well as all Section 1983 claims and state tort claims against movants.

The doctrine of relation back, pursuant to Fed.R.Civ.P. 15(c), cannot reasonably apply to this case, where the only defendants notified of the lawsuit

prior to December of 2006 or January 2007, were the original Kintock

defendants, who themselves were not served until April of 2004 (more than two

years after the challenged events) and are not represented by the undersigned.

See Docket # 20; Garvin v. City of Philadelphia, 354 F.3d 215 (3d Cir. 2003).

Under the circumstances of this case, no notice can reasonably by imputed to

Parole Agent Paul or any of  the DOC defendants.

While the claims in the amended complaint appear to arise out of the

same challenged occurrences as in the original complaint, the requisite notice

is lacking.  The Third Circuit has interpreted this requirement as containing

two prongs, notice and the absence of prejudice, each of which must be

satisfied.  See Nelson v. County of Allegheny, 60 F.3d 1010, 1014-15 (3d

Cir.1995).  Here, as argued in the prior Rule 4(m) argument, the delay has

prejudiced movants because the case is so stale that witnesses—even many of

the defendants—are no longer available and have not been served.  Under the

circumstances, plaintiff cannot show that movants should have known that

they would be sued.  Plaintiff was aware of their identities and therefore this

was not a question of the identity of the proper party.  See Garvin v. City of

Philadelphia, 354 F.3d 215, 222 (3d Cir.2003); Singletary v. Pennsylvania

Department of Corr., 266 F.3d 186, 194 (3d Cir.2001).

> C.    Plaintiff's Claims Under the ADA and Rehabilitation Act Fail
>       Because He Sues Only Individuals and His Mental Health
>       Condition Does Not Qualify as a Disability.

It is not clear whether plaintiff is event asserting any ADA or

Rehabilitation Act claims against movants. Even if he were and even if the

statute of limitations did not bar those claims, the claims would still fail because they cannot be asserted against movants and because the complaint affirmatively shows that Feliz's alleged mental health impairment does not qualify as a disability.

A plaintiff may not maintain an action under the ADA or the RA against individual defendants because neither the ADA nor the RA impose liability upon individuals. See 29 U.S.C. § 794(b)(RA); 42 U.S.C. § 12131(1)(ADA); e.g. Webber v. Pennsylvania Bd. of Prob. and Parole, No. 3:CV 03 1600,  2006 WL 581197, *2 (M.D. Pa. Mar. 8, 2006.); Muhammad v. N.J. Dept. of Corrections, 2006 WL 2385131 *8 (D.N.J. 2006).

To establish that he has a "disability," plaintiff must show that: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such impairment; or (3) he was "regarded as" having such an impairment. See Marinelli v. City of Erie, Pa., 216 F.3d 354, 359 (3d Cir.2000). Major life activities are those functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).   Only extremely limiting disabilities qualify for protected status under the ADA. See Marinelli, 216 F.3d at 362.

Plaintiff's amended complaint affirmatively shows that his mental health issue did not limit any of his major life activities, at and during the months before the time he was returned to SCI-Graterford.  His averments show that movants did not regard him as having such an impairment.  And, obviously,

the DOC would not have placed him in a pre-release center without the psychological services that he wanted if he had a record of a qualifying impairment.

The Rehabilitation Act, 29 U.S.C. § 791 et seq., employs the same definition of disability as that found in the ADA. Compare 29 U.S.C. § 705(20)(A)(i) (defining "individual with a disability" as one with a "physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment") with 42 U.S.C. § 12102(2)(A)-(C) (defining "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities"). Emerick v. Norfolk Southern Ry. Co., No. 3:03-266, 2006 WL 3692595, *13 (W.D. Pa. Dec. 12, 2006).

As such, Feliz's ADA and Rehabilitation Act claims must fail.

D.     The Civil Conspiracy Should be Dismissed.

Plaintiff alleges a civil conspiracy related to federal civil rights, the ADA, and state tort law.  Thus,  he must allege the elements of a civil conspiracy.  A civil conspiracy is "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'"  Hampton v. Hanrahan, 600 F.2d 600, 620–21 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754 (1980), cited in Melo v. Hafer, 912 F.2d 628, 638 n.11 (3d Cir. 1990).

The sufficiency of the federal and state law claims for civil conspiracy are governed by the Federal Rules of Civil Procedure. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 926 (9th Cir. 2001); Simmons v. City of Philadelphia, 947 F.2d 1042, 1085 (3d Cir. 1991). While Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," conclusory allegations of "concerted action" and agreement without allegations of fact underpinning the allegations are insufficient to meet this requirement.  E.g. Lynn v. Christner, 184 F. App'x 180, 184 (3d Cir. 2006) (quoting Abbott v. Latshaw, 164 F.3d  141, 148 (3d Cir. 1998)). Rather, to satisfy the requirements of Rule 8(a), Feliz's complaint must allege at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn.  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir 2005).

Therefore, the conspiracy claims against movants should be dismissed.

E.      Heck v. Humphrey Bars the Eighth Amendment Claim.

Where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the rule under Heck v. Humphrey, 512 U.S. 477, 481-482  (1994), requires that the litigant must first achieve favorable termination of his available state, or federal habeas opportunities to challenge the underlying conviction or sentence.  Muhammad v. Close, 540 U.S. 749  (U.S. 2004).  Feliz cannot show favorable termination of a challenge to his conviction for aggravated assault related to what occurred on June 1, 2004.    If Feliz were successful on his excessive force claim in the complaint, that claim would necessarily call into question his conviction for

aggravated assault for the same interaction.  The rule announced in Heck v.

Humphrey,  prevents this indirect attack on the validity of Feliz's conviction for

aggravated assault.

Therefore, the excessive force related claims should be dismissed as to all

movants.  Among the four movants Yanis, Caison, Bello and Paul, the only

alleged involvement of  Yanis and Caison regard plaintiff's removal from

Kintock on June 1, 2001.  Therefore, the claims against Yanis and Caison

should be dismissed in their entirety.

F.    Plaintiff Has No Applicable Entitlement to Due Process

Plaintiff erroneously claims a due process entitlement to notice and a

hearing at Kintock before his return to SCI-Graterford from pre-release.  He

has no such entitlement.  Plaintiff must first have a liberty interest before the

right to due process is triggered.  A liberty interest subject to the protections of

due process under § 1983, "may arise from only one of two sources: the Due

Process Clause or the laws of a state." Asquith v. Department of Corrections, 186

F.3d 407, 49  (3d Cir. 1999).  Here, Feliz has neither. Winsett v. McGinnes, 617

F.2d 996, 1004-1005 (3d Cir.1980), cert. denied, 449 U.S. 1093 (1981) (U.S.

Constitution does not create liberty interest in participation in pre-release

program); Wright v. Cuyler, 517 F.Supp. 637 (E.D.Pa.1981)(Pennsylvania law

does not create liberty interest in participation in pre-release program); Lott v.

Arroyo, 785 F.Supp. 508 (E.D.Pa.1991).

Under the Due Process Clause, a prisoner "does not have a liberty

interest in remaining in a preferred facility within a state's prison system."

Asquith v. Department of Corrections, 186 F.3d 407, 410  (3d Cir. 1999)(citation

omitted). In Asquith, the Third Circuit held that an inmate who had lived in a

halfway house while on pre-release status, did not have a liberty interest in

remaining there.  Because the halfway house amounted to institutional

confinement, "[the plaintiff's] removal from the halfway house did not trigger

the protections of the Due Process Clause." Asquith, 186 F.3d at 411.

Indeed, a similar due process claim has been dismissed as frivolous.

McFadden v. Lehman, 968 F.Supp. 1001 (M.D. Pa. 1997) (citing 28 U.S.C. §

1915(e)(2)(B)(i).

Plaintiff also alleges that the misconduct reports issued by Bello were

false.  This also fails to trigger due process.  The filing of a fraudulent

misconduct report and related disciplinary sanctions do not without more

violate due process. See Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir.

2002).

Similarly, plaintiff may allege that the denial of his request for

psychological rehabilitative programming  either at Kintock or by transfer  to

January of 2001 from Kintock to another facility, violated his right to due

process.  It is well-established that Feliz had no constitutional right to

rehabilitation while in prison.  McFadden v. Lehman,  968 F.Supp. at 1004

(citing cases).  "Many courts have held that prisoners have no constitutional

right to various rehabilitative programs including drug treatment, employment,

or other rehabilitation, education or training programs while in prison. Id.

(citing Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir.1995);
Abdul-Akbar v. Dept. of Corr.,  910 F.Supp. 986, 1002 (D.Del.1995).

Therefore, plaintiff's due process claims against movants should be
dismissed.

G.    The Claim for Negligent Supervision/Monitoring Fails to State
a Claim.

Among the ramblings of plaintiff's amended complaint, he appears to
claim that Bello, some non-movants, and possibly Yanis, failed to supervise
and/or monitor Kintock adequately, and that failure caused all his subsequent
woes.  This claim fails to rise to the standards required under Section 1983.
Negligence is not enough to state a Section 1983 claim.  Constitutional
protections afforded to prisoners are not triggered by the simple negligence of
prison officials. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v.
Cannon, 474 U.S. 344, 347-48 (1986)( mere negligent conduct that leads to
serious injury of a prisoner by a prisoner does not expose a prison official to
liability under § 1983).  Thus, the federal negligence claims fail. To the extent
that plaintiff raises the same issue as a state law claim, that fails as well, as
discussed under the sovereign immunity argument below.

H.    The Claims Against Parole Agent Paul are Baseless.

Plaintiff's claim against Paul about failing to intervene in the excessive
force used to detain plaintiff fails under a Heck analysis, as discussed above.
This is especially true because Paul was only present for the tail end of the

detention/subduing of Feliz, at a time when plaintiff's own aggravated assault had to have already occurred.

What remains against Paul is plaintiff's claim that Paul had a duty to intervene with a DOC decision to remove Feliz from the Kintock Center and return him to SCI-Graterford. Perhaps, among plaintiff's ramblings, there may be an associated conspiracy claim. The remaining claim or claims against Paul fail because Paul, a parole agent who does not work for the DOC, had no duty to intervene in a DOC decision, even if Paul actually knew ahead of time of the DOC decision and its basis on allegedly faulty information. Paul lacks the personal involvement in the DOC decision to remove Feliz from the Kintock Center, as required under § 1983. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Moreover, as already argued, plaintiff had no due process right to remain at the prerelease center.

Therefore, all claims against Parole Agent Paul should be dismissed.

I.      To the Extent that Feliz Raises Other Federal Claims, They Fail to State a Claim because They Fail to Allege the Minimal Facts Required under Fed.R.Civ.P. 8.

Plaintiff states in conclusory language among his rambling that various defendants, including movants, violated his rights under the Establishment Clause, 42 U.S.C. § 1981, and the Equal Protection Clause. He similarly makes legal conclusions about other alleged violations, including the Ninth Amendment. To the extent that Feliz raises any federal claim other than a First Amendment retaliation claim and the Eighth Amendment claims referred

to above, he fails to make the minimum allegations required to state a claim under Fed.R.Civ.P. 8.  Therefore, these claims should be dismissed.

      J.      Sovereign Immunity Bars the State Law Claims Against Movants.

Movants are entitled to sovereign immunity from all the state law claims. Sovereign immunity is the law in Pennsylvania.  Shoop v. Dauphin Cty., 766 F. Supp. 1327, 1333-34 (M.D. Pa.), aff'd, 945 F.2d 396 (3d Cir. 1991), cert. denied, 112 S. Ct. 1178 (1992); La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Commw.1992).  Movants are immune from suit for those actions taken within the scope of their duties, except in those instances in which the immunity has been specifically waived. 1 Pa. Cons. Stat. § 2310; Yakowicz v. McDermott, 548 A.2d 1330, 1333 (Pa. Commw. 1988).   As has long been the mandate from Pennsylvania's judiciary, under Pennsylvania law, sovereign immunity waivers are exceptions to the rule of immunity and therefore strictly construed.  See Mascaro v. Youth Study Ctr., 523 A.2d 1118, 1123 (Pa. 1987).

All movants could not do what they allegedly did unless they were working as DOC or PBPP officials, and thus acted within the scope of their employment. E.g. Story v. Mechling, 2007 WL 127974, *2  (3d Cir. 2007) (affirming that defendant was acting within the scope of his employment when he came into physical contact with plaintiff, and thus was entitled to sovereign immunity under Pennsylvania law); Collins v. Bopson , 816 F.Supp. 335, 342 (E.D. Pa. 1993) (holding that corrections officers were immune from suit involving alleged beating of inmate).  Thus, sovereign immunity bars damages even when intentional torts implicating willful misconduct are alleged.

Contrast with 42 Pa. Cons.Stat. § 8550 (abrogating immunity for "local agency or employee thereof" when employee's action constituted "crime, actual fraud, actual malice or willful misconduct"); see Shoop v. Dauphin Cty, 766 F.Supp. 1327, 1334 (M.D.Pa.1991).

Furthermore, none of the nine enumerated exceptions to sovereign immunity apply. See 42 PA. Cons. Stat. § 8522. Therefore, Feliz's state law claims against movants cannot proceed.

IV.    CONCLUSION

For all the above reasons, this Court should dismiss plaintiff's complaint.

Respectfully submitted,

THOMAS W. CORBETT, JR.
ATTORNEY GENERAL

By:    /s/Sue Ann Unger
       Sue Ann Unger
Office of Attorney General            Senior Deputy Attorney General
21 S. 12th Street, 3rd Floor          Attorney I.D. No. 39009
Philadelphia, PA  19107
Telephone:  (215) 560-2127            Susan J. Forney
        Fax:  (215) 560-1031          Chief Deputy Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDDY A. FELIZ, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| THE KINTOCK GROUP, et al. | : | No. 02-3541 |
| Defendants | : | |

CERTIFICATE OF SERVICE

I, Sue Ann Unger, hereby certify that the Motion to Dismiss has been

filed electronically and is available for viewing and downloading from the

Court's Electronic Case Filing System.  I further certify that a true and correct

copy of the said document was mailed on January 29, 2007, by first class mail,

postage prepaid to:

Mike Shniedmann
1347 Wood Street
Philadelphia, PA  19107

Respectfully submitted,

THOMAS W. CORBETT, JR.
ATTORNEY GENERAL

By:  /s/Sue Ann Unger
      Sue Ann Unger
      Senior Deputy Attorney General
      Attorney I.D. No. 39009

Susan J. Forney
Chief Deputy Attorney General

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA  19107
Telephone:  (215) 560-2127
      Fax:  (215) 560-1031